**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Carlos GANDIAGA, Defendant–Appellant.**

**No. 01CA0791.**

Colorado Court of Appeals,
Div. IV.

Nov. 7, 2002.

Certiorari Denied June 2, 2003.

Ken Salazar, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

E. Richard Toray, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Carlos Gandiaga, appeals from the trial court's order denying his Crim. P. 35(c) motion to vacate his convictions for attempted first degree murder and second degree kidnapping. We affirm.

The evidence presented at trial revealed that, at the behest of a reputed drug lord, defendant and two other men kidnapped the victim and drove him to a remote spot in the mountains. There, defendant and his cohorts got out of the car, which defendant had left running with the key in the ignition. Defendant ordered one of the men to kill the victim, and the man put a rifle to the victim's head and pulled the trigger. The rifle malfunctioned, however, and while the three men were attempting to fix it, the victim moved into the driver's seat and drove the car away.

Defendant elicited evidence at trial that he told police officers that he acted out of fear of the drug lord and that he intentionally left the car running with the key in the ignition. The jury rejected his duress defense, and the court sentenced him to twenty years incarceration.

On appeal, a division of this court affirmed his convictions. *People v. Gandiaga*, (Colo. App. No. 98CA1198, July 15, 1999)(not published pursuant to C.A.R. 35(f)).

Thereafter, defendant filed a Crim. P. 35(c) motion to vacate his convictions, alleging that his two trial attorneys had been ineffective in: (1) failing to adequately consult with him and investigate the case; (2) allowing him to be subjected to a police interview without either the presence of counsel or receipt of a tangible benefit; (3) failing to discuss a plea offer with him; (4) failing to object to inappropriate evidence and to move for a mistrial; and (5) failing to recognize, research, plead, and present to the jury an additional affirmative defense to the charge of attempted murder.

After conducting an evidentiary hearing, the trial court denied defendant's motion.

## I. Standards of Review

The constitutional right to effective assistance of counsel "is not a guarantee against mistakes of strategy or exercise of judgment in the course of a trial as viewed through the 20–20 vision of hindsight following the return of a verdict in a criminal case." *Dolan v. People*, 168 Colo. 19, 22–23, 449 P.2d 828, 830 (1969); *see Davis v. People*, 871 P.2d 769, 773 (Colo.1994)("Mere disagreement as to trial strategy ... will not support a claim of ineffectiveness.").

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that: (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 694 (1984); *see Davis v. People, supra*, 871 P.2d at 772.

In assessing the first prong of the *Strickland* test, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington, supra*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, 93 (1955)); *see Davis v. People, supra*, 871 P.2d at 772.

To establish prejudice under the second prong of the *Strickland* test, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington, supra*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *see Davis v. People, supra*, 871 P.2d at 772.

To obtain relief, the defendant must prove, by a preponderance of the evidence, each prong of the *Strickland* test. *People v. Russell*, 36 P.3d 92, 95 (Colo.App. 2001). If a court determines that counsel's performance was not constitutionally deficient, it need not consider the prejudice prong of the ineffective assistance of counsel test. *People v. Sparks*, 914 P.2d 544, 547 (Colo.App.1996). Similarly, if a court determines that a defendant failed to affirmatively demonstrate prejudice, it may resolve the claim on that basis alone. *People v. Garcia*, 815 P.2d 937, 941 (Colo.1991).

The trial court determines the weight and credibility to be given the testimony of witnesses in a Crim. P. 35(c) hearing. And when evidence in the record supports the court's findings, its ruling will not be disturbed on review. *Kailey v. Colorado State Department of Corrections*, 807 P.2d 563, 567 (Colo.1991).

## II. Pretrial Contact with Defendant/Pretrial Investigation

Defendant first argues that he was denied the effective assistance of counsel because trial counsel: (1) met with him only one time at the jail prior to trial; and (2) failed to conduct any pretrial investigation. We are not persuaded.

As to the first claim, trial counsel testified, without contradiction, that they met with defendant before and after pretrial hearings at the courthouse and that they contacted defendant by telephone fairly often. In light of this testimony, the trial court's determination that defendant failed to show deficient performance as a result of trial counsel's communication with him is supported by the record.

As to the other claim, a defendant is entitled to a pretrial investigation sufficient to reveal potential defenses and the facts relevant to guilt or penalty; a less than comprehensive investigation is reasonable only to the extent that reasonable professional judgment supports the limits of the investigation. *Davis v. People, supra*, 871 P.2d at 773; *People v. Apodaca*, 998 P.2d 25, 29 (Colo.App.1999).

Here, the record reflects that trial counsel reviewed the witness statements and police reports and met often with the lead detective. They did not, however, conduct an independent investigation. Consequently, they did not attempt to find or interview the reputed drug lord or another alleged witness to the kidnapping. Nor did trial counsel attempt to discover the reputed drug lord's criminal history prior to trial.

Trial counsel explained that they decided not to interview the reputed drug lord based on their assumption that he would only invoke his Fifth Amendment privilege against self-incrimination if contacted. This assumption was based on information from the police that the drug lord would not speak to the police except through retained counsel. Trial counsel also testified that defendant had already made them aware of the drug lord's criminal history.

Even if we assume that trial counsel's performance was deficient in limiting their investigative efforts solely to obtaining information from the police and their client, we would nonetheless conclude that defendant is not entitled to relief.

At the Crim. P. 35(c) hearing, defendant did not produce any evidence of the willingness of the drug lord or the other witness to testify. Nor did defendant produce any evidence or make an offer of proof with respect to the substance, credibility, or admissibility of their anticipated testimony. Consequently, he has failed to demonstrate how counsel's failure to investigate resulted in any prejudice to him. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo.App.1994).

## III. Uncounseled Police Interrogation

Next, defendant contends that the trial court erred in not finding trial counsel ineffective for allowing the police to interrogate him in trial counsel's absence and without gaining a benefit in exchange. We disagree.

The trial court determined that, although allowing an uncounseled interview would generally fall below the normal stan-

dards of competence, there was no showing of prejudice because the police did not learn anything substantially new or different from what they had learned during two previous interrogations of defendant.

■ It is the appellant's duty to provide those portions of the record necessary to substantiate the claims of error on appeal. Absent such a record, we must presume that the trial court's ruling was correct. *See People v. Bishop*, 7 P.3d 184, 188 (Colo.App. 1999).

Here, none of the tapes or transcripts of the interrogations was designated as part of the record on appeal. Consequently, we are unable to determine whether the statement obtained during the uncounseled interview was used at trial to discredit defendant. And, without the ability to independently review the statements, we must presume that the trial court correctly ruled that nothing substantially new or different was uncovered in the uncounseled interrogation. Moreover, from the limited record before us, it appears that defendant provided police his exculpatory version—namely, that he intentionally left the car running—only during the uncounseled interview. Thus, he may have benefited from that event.

## IV. Plea Offer

Defendant also argues that trial counsel were ineffective for failing to advise him of a plea offer. We are not persuaded.

■ Defense counsel's failure to convey a plea offer to a defendant constitutes deficient performance even though the defendant otherwise receives a fair trial. *People v. Perry*, 68 P.3d 472, 2002 WL 220850 (Colo.App. No. 98CA2122, Feb. 14, 2002).

■ Here, while trial counsel could not specifically recall discussing the plea offer with defendant, they felt certain they had done so. Further, at one point in his testimony, one attorney recalled convincing the prosecution to keep the plea offer open longer to allow defendant more time to consider it. Inasmuch as defendant produced no admissible evidence to the contrary, we, like the trial court, conclude that he has failed to carry his burden of proof with respect to this claim too. *See generally People v. Russell*, *supra*, 36 P.3d at 95; *cf. People v. Fleming*, 781 P.2d 1384, 1386, 1388–89 (Colo.1989)(providency hearing judge testified that, although he could not recall specific advisement, his usual practice was to advise of certain matters).

## V. Objections and Mistrial

Defendant asserts that his two trial attorneys were ineffective in failing to object to evidence and to request a mistrial. Again, we disagree.

■ Initially, defendant argues that trial counsel should have objected to questioning that the trial court subsequently indicated was inappropriate. However, he does not identify with any particularity the questions the trial court considered inappropriate. Consequently, we have no basis for determining whether trial counsel's performance was either deficient or prejudicial to defendant. *See People v. Rodriguez*, 914 P.2d 230, 250 (Colo.1996)(appellant must inform appellate court both as to specific errors relied upon and as to grounds, supporting facts, and authorities therefor).

Next, the record reflects that trial counsel considered requesting a mistrial when the prosecution improperly inquired about defendant's exercise of his right to remain silent. However, trial counsel decided not to seek a mistrial because, in their view, until then trial had been progressing favorably for the defense. For example, trial counsel had seated a particular juror who they believed would be favorable to the defense, and the victim had provided testimony favoring the duress defense. In light of these considerations, we find no basis for disturbing the trial court's determination that trial counsel passed up the opportunity to request a mistrial based on the plausible strategy of using advantages that might not recur upon retrial. *Cf. People v. Dillard*, 680 P.2d 243, 246 (Colo.App.1984)(defense counsel's decisions not to object based on his belief that the prosecutor's remarks did not warrant a mistrial is considered "a valid tactical decision within the discretion of trial counsel").

## VI. Additional Affirmative Defense

Next, we reject defendant's contention that trial counsel were ineffective because they failed to recognize, research, plead, and have the jury instructed on an abandonment defense to the charge of attempted murder.

■ Here, the trial court determined that counsel's failure to pursue an abandonment defense was a matter of trial strategy and that the defense was inapplicable to the facts of this case. Defendant argues otherwise, however, pointing to evidence that: (1) he and the victim had been friends; (2) he had abandoned an earlier opportunity to kill the victim; and (3) he intentionally left the car running. He also points to a conflict in the evidence concerning whether the victim had remained inside, or stepped outside, the car in the mountains.

Defendant would have been entitled to an affirmative defense instruction on abandonment if there were evidence in the record to support the defense. *See generally People v. Saavedra–Rodriguez,* 971 P.2d 223, 228 (Colo.1998).

Section 18–2–101(3), C.R.S.2002, provides an affirmative defense to an attempted crime when "the defendant abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting the complete and voluntary renunciation of his criminal intent."

In *People v. Johnson,* 41 Colo.App. 220, 222, 585 P.2d 306, 308 (1978), a division of this court recognized that, "even though, in a strict analytical sense, the crime of attempt is complete once the actor intentionally takes a substantial step towards the commission of the crime, nevertheless, the defense of abandonment is present if he thereafter voluntarily renunciates his criminal intent."

Accordingly, the defense of abandonment may apply at various stages, early and late, in the commission of attempted crimes. However, the defense, which is derived from Model Penal Code § 5.01(4), has its limits:

> If ... the actor has put in motion forces that he is powerless to stop, then the attempt has been completed and cannot be abandoned. In accord with prior law, the actor can gain no immunity for his completed effort, as for example when he fires at an intended victim but misses.

Model Penal Code and Commentaries § 5.01 cmt. at 360 (1985); *see* 2 W. LaFave & A. Scott, *Substantive Criminal Law* § 6.3, at 57 (1986)("Assuming a defense of voluntary abandonment, does there come a point at which it is too late for the defendant to withdraw? Obviously there must be, for it would hardly do to excuse the defendant from attempted murder after he had wounded the victim or, indeed, after he had fired and missed."); *see also State v. Smith,* 409 N.E.2d 1199, 1201 (Ind.Ct.App.1980)(for abandonment to apply, a defendant must "detach[ ] himself from the criminal enterprise before the act with which he is charged is in the process of consummation or has become so inevitable that it cannot reasonably be stayed"); *Ramirez v. State,* 739 P.2d 1214, 1217 (Wyo.1987)("once a defendant has completed his criminal effort, it is too late for abandonment").

Here, the evidence relied upon by defendant demonstrates a reluctance to kill the victim and possibly an abandonment of an earlier, discrete opportunity to kill him. However, that evidence does not place in dispute the evidence that the victim escaped only after one of defendant's cohorts, at defendant's command, pointed the gun at the victim's head, pulled the trigger, and the gun malfunctioned. Under these circumstances, we conclude the defense of abandonment was unavailable to defendant as a matter of law. *See* LaFave, *supra,* at 53 (defense of abandonment not available "if the defendant fails because of unanticipated difficulties in carrying out the criminal plan at the precise time and place intended").

Because the facts of the case do not admit of an abandonment defense, trial counsel were not ineffective in failing to pursue it. *See People v. Lesslie,* 24 P.3d 22, 24–25 (Colo. App.2000).

## VII. Cumulative Effect of Attorney Error

Last, defendant contends that the cumulative impact of trial counsel's errors requires reversal. We disagree.

While prejudice may result from the cumulative impact of multiple attorney errors, *see Cooper v. Fitzharris,* 586 F.2d 1325, 1333 (9th Cir.1978), we conclude that the assumed or actual errors of counsel here were neither so numerous nor so prejudicial as to have deprived defendant of a fair trial. *Cf. People v. Caldwell,* 43 P.3d 663, 673 (Colo.App.2001)(applying cumulative error doctrine).

Accordingly, the order is affirmed.

Judge VOGT and Justice ERICKSON* concur.