The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Louis MANTOS, Defendant–Appellant.

No. 07CA2107.

Colorado Court of Appeals, Div. I.

Aug. 6, 2009.

Rehearing Denied Oct. 29, 2009.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Dean Neuwirth, P.C., Dean Neuwirth, Denver, Colorado; Kaufman & Levinson, LLC, Rick Levinson, Colorado Springs, Colorado, for Defendant–Appellant.

Opinion by: Judge LICHTENSTEIN.

Defendant, John Louis Mantos, appeals the judgment of conviction entered on a jury verdict finding him guilty of felony sexual exploitation of a child. We vacate the judgment of conviction on this count and remand the case to the district court for entry of judgment of acquittal.

## I. Introduction

This case concerns whether downloading and saving sexually exploitative material in a share-capable computer file constitutes the felony offense of sexual exploitation of a child, as defined in section 18–6–403(3)(b), C.R.S.2008. We conclude that it does not.

## II. Facts

Defendant owns a computer printer repair business. His business shares office space with a separate business owned by his wife.

In December 2004, defendant's stepdaughter, who was employed at his wife's business, was downloading music through a file sharing program installed on defendant's work computer. While using this program, she showed a coworker "some files with childrens' names and explaining sexual activities" that she had found on the computer. The coworker eventually contacted the police, who visited defendant at his business on July 18, 2005, and seized his computer.

During a forensic examination of defendant's computer hard drive, detectives discovered numerous digital picture and video files containing child pornography in the computer's Recycle Bin. Detectives also discovered a copy of "KAZAA Light," a computer program used for computer-to-computer file sharing over the Internet (also known as peer-to-peer file sharing). Defendant later testified that he purchased this computer program online for the purpose of downloading music.

Defendant was charged with two felony counts of sexual exploitation of a child. The first count alleged that defendant, in violation of section 18–6–403(3)(b), "prepared, arranged for, published, produced, promoted, made, sold, financed, offered, exhibited, advertised, dealt in, or distributed any sexually exploitative material." The second count alleged that defendant, in violation of section 18–6–403(3)(c), C.R.S.2008, possessed with intent to distribute sexually exploitative material. He was also charged with 151 misdemeanor counts of possession of sexually exploitative material, in violation of section 18–6–403(3)(b.5), C.R.S.2008.

At trial, the prosecution focused on defendant's alleged use of KAZAA Light to support its theory of conviction. One investigating detective testified that defendant's computer contained a folder named "My Shared" that had been automatically created by KAZAA Light. By default, anything saved within the My Shared folder is automatically set to "share" and can be seen by other computer users using KAZAA Light. Thus, if KAZAA Light user A wishes to share a file or even a group of files with KAZAA Light user B (where user B could be an anonymous user unknown to user A ),

user A need simply place the file or files within his My Shared folder. User B may then use his copy of KAZAA Light to locate and download the file or files in user A's My Shared folder without further action by user A.

The detective then explained that a KAZAA Light user has the option of changing a setting on the My Shared folder to "not share" so that files within it cannot be downloaded or even seen by other KAZAA Light users. In addition to this "master toggle" that can preclude the visibility and sharing of all files residing within the My Shared folder, the detective testified that KAZAA Light also allows users to change the share setting of each individual file contained within the My Shared folder. Thus, a KAZAA Light user could prevent the sharing of all items contained within the My Shared folder by setting the master toggle to "not share," or prevent the sharing of only a select group of files in the My Shared folder by setting the master toggle to "share," but those individual files to "not share."

There is no dispute that the master toggle on defendant's My Shared folder had been manually set to "not share," while each individual file contained within was on the default "share" setting. The prosecution did not present any evidence that defendant had shared the contents of his My Shared folder with other KAZAA Light users, and one of the detectives testified on cross-examination that there was no way to tell whether the master toggle for defendant's My Shared folder had ever been set to anything but "not share."

At the close of the prosecution's evidence, defendant moved for judgment of acquittal on the ground that there was insufficient evidence for the jury to convict on count one, sexual exploitation of a child as defined in section 18–6–403(3)(b), because there was no evidence that defendant ever made the sexually exploitative material or that he distributed the material on his computer to any third party. The court submitted the count to the jury, finding that the terms "prepares" and "arranges for" in the statute could reasonably be understood to include "someone downloading these items [of sexually exploi-

tative material] to completion, saving them so they're there for further use, and then allowing these potentially shared items to sit there." The court concluded, "It's an issue of fact whether the jury believes that the particular activity claimed by the prosecution was a way of the defendant of procuring and/or arranging for the, the distribution of these items." It distinguished the instant offense from the offense of possession with intent to distribute on the basis that the instant offense requires more than just the intent to distribute; it requires "that [the defendant] have prepared the item or arranged for the item to be distributed."

At the close of all the evidence, defendant renewed his motion for acquittal on count one, again arguing that there was no evidence that he had committed any act listed in section 18–6–403(3)(b). The court denied defendant's motion.

In closing argument, the prosecutor told the jury she was not required to show that the material had actually been distributed. Rather, she said, the jury could convict defendant of sexual exploitation of a child under section 18–6–403(3)(b) because defendant had "prepared the list." The prosecutor asserted that defendant was "reaching out to others saying, 'I want this specific stuff and I want it downloaded so I can create my own collection, my own list. As soon as I hit go, someone else receives it so that he can advertise it.'" The prosecutor told the jury to find defendant guilty because "[he] prepared his list of child pornography and arranged to obtain his child pornography through KAZAA Light."

The jury acquitted defendant of possession with intent to distribute sexually exploitative material, but found defendant guilty on the remaining misdemeanor counts. In this appeal, defendant challenges only his felony sexual exploitation of a child conviction under section 18–6–403(3)(b).

## III. Discussion

Defendant contends that his conviction for felony sexual exploitation of a child was invalid. He asserts that the court misconstrued the meaning of the word "prepares" in section 18–6–403(3)(b) to encompass the conduct of possessing with the potential to distribute sexually exploitative material, and thereby submitted the case to the jury on an erroneous legal theory. He argues that because the evidence was insufficient to support a conviction under the proper interpretation of the statute, his conviction must be vacated. We agree.

### A. Statutory Interpretation

The interpretation of a statute is a question of law and review is de novo. *A.P.E. v. People,* 20 P.3d 1179, 1182 (Colo.2001); *Fendley v. People,* 107 P.3d 1122, 1124 (Colo. App.2004). When interpreting a statute, an appellate court must give effect to the intent of the General Assembly, which is vested with the power to define criminal conduct and to establish the legal components of criminal liability. *People v. Hoskay,* 87 P.3d 194, 197–98 (Colo.App.2003). To determine the General Assembly's intent, we must look first to the plain language of the statute. *See* § 2–4–101, C.R.S.2008 (words and phrases shall be read in context and construed according to the rules of grammar and common usage); *People v. Banks,* 9 P.3d 1125, 1128 (Colo.2000). We read the statute as a whole "to give 'consistent, harmonious and sensible effect to all of its parts,'" *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005) (quoting *Bd. of County Comm'rs v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo.2004)), in accordance with the presumption that the General Assembly intended the entire statute to be effective. *See* § 2–4–201(1)(b), C.R.S. 2008.

In pertinent part, section 18–6–403(3) defines the offense of sexual exploitation of a child as follows:

A person commits sexual exploitation of a child if, for any purpose, he or she knowingly:

. . .

(b) *Prepares,* arranges for, publishes, including but not limited to publishing through digital or electronic means, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or

distributes, including but not limited to distributing through digital or electronic means, *any sexually exploitative material.*

(Emphasis added.)

■ Here, the General Assembly proscribed the act: prepares any sexually exploitative material. Under the plain language of the statute, "prepares" describes the act of making or producing the material. *See Webster's Third New International Dictionary* 1790–91 (2002) (defining prepare as "make, produce"). As so defined, the term "prepares" is commonly used to describe a creative process resulting in a product: for example, a person can prepare a large meal or prepare a speech. *Id.*

The People on appeal, however, cite *Webster's* dictionary for an alternative definition of "prepares" as "to put into condition for a particular use, application, or disposition." *Id.* For example, one could prepare an airplane for takeoff. Relying on this definition, the People contend the word "prepares" describes the act of preparing to distribute, and therefore it encompasses defendant's act of downloading and saving the material for future distribution.

We reject this interpretation because the suggested alternative definition of "prepares" is predicated on additional language which does not appear in the statute. Significantly, the General Assembly did not employ the term "prepares" to describe the preparation for an action. For instance, the General Assembly did not insert the language "to distribute," in connection with the verb "prepares." The statute says "prepares ... any sexually exploitive material"; it does not say "prepares to distribute any sexually exploitive material." We decline to insert the phrase "to distribute" when the General Assembly did not do so.

Reading the plain language of the statute, we conclude "prepares" as used in section 18–6–403(3)(b) means engaging in the process of creating any sexually exploitative material.

We note that the General Assembly did not intend that the preparation of sexually exploitative material for distribution go un-

punished. The General Assembly addressed such conduct in section 18–6–403(3)(c), which proscribes the act of "possess[ion] with intent to ... distribute ... any sexually exploitative material." Here, defendant was additionally charged under subsection (3)(c), and the jury returned a verdict of not guilty.

### B. Application

The trial court permitted the prosecution to argue during closing argument that the statute proscribed the conduct of preparing the already-existing material for distribution. The General Assembly did not employ the term "prepare" to encompass this conduct. Thus the court erred because it "improperly permit[ted] the jury to adopt the prosecutor's [and the court's] [erroneous] version of the law." *People v. Anderson,* 991 P.2d 319, 321 (Colo.App.1999); *see Longinotti v. People,* 46 Colo. 173, 175, 102 P. 165, 166 (1909).

■ Where, as here, a case is submitted on a legally inadequate theory, we review under a harmless error standard. *Anderson,* 991 P.2d at 321. If review of the entire record demonstrates a reasonable possibility that a defendant could have been prejudiced by the error, the error cannot be deemed harmless. *Id.*

Here, we have determined that "prepares ... any sexually exploitative material" describes the conduct of creating the sexually exploitative material. Consequently, defendant's conduct of downloading and saving the already-existing material in a share-capable computer file is not proscribed by the term "prepares" in section 18–6–403(3)(b). *See Longinotti,* 46 Colo. at 175, 102 P. at 166 (reversing conviction based on a legally erroneous interpretation of a statute that, properly interpreted, did not proscribe defendant's conduct). We conclude, therefore, that the error was not harmless and the conviction cannot stand.

■ We reach this conclusion even though the jury was instructed on all thirteen methods in which a person may violate section 18–6–403(3)(b). As recognized in *Griffin v. United States,* 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), a reviewing court may appropriately negate a verdict where a de-

fendant is convicted on a legally inadequate basis of liability, even where the jury is instructed on more than one theory of liability. The *Griffin* Court stated:

> Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question ... fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.

*Id.* at 59, 112 S.Ct. 466; *see People v. Dunaway,* 88 P.3d 619, 629 (Colo.2004) ("In *Griffin,* the Court took great care to distinguish between jury instructions that provide a *legally inadequate* basis of liability, which are violative of due process, and instructions that merely provide a *factually inadequate* basis of liability, which are not." (emphasis in original)).

We note that the prosecution alternatively argued to the jury that defendant could be found guilty on the second term listed in the instruction: he "arranged for" the sexually exploitative material. We conclude, as we did with the term "prepares," that the particular theory of conviction submitted to the jury under the term "arranges for" was contrary to law. *See Anderson,* 991 P.2d at 321; *see also Longinotti,* 46 Colo. at 175, 102 P. at 166.

■ Here, the court and the prosecution differed in their interpretation of the term "arranges for." The court allowed the case to go to the jury on the theory that defendant "arranged for the item to be distributed." The prosecution argued to the jury that defendant "arranged to obtain his child pornography through KAZAA Light." We conclude that the court and the prosecution erroneously construed the term "arranges for" as encompassing either arranging for the distribution of material, or arranging to obtain material. The General Assembly did not proscribe "arranging for obtaining or distributing" the material in the plain language of section 18–6–403(3)(b), and therefore such conduct was not proscribed by the phrase

"arranges for ... any sexually exploitative material."

To the extent the term "arranges for" inherently can be construed as synonymous with "arranges to obtain," we conclude that such a construction would be impermissible here.

We recognize that the term "arranges for" is commonly used to describe the steps taken to obtain something. For example, a person can arrange for medical care. However, so construed in the present context, this conduct would be indistinguishable from the conduct of taking a substantial step to obtain (or possess) sexually exploitative material. In other words, this conduct would constitute "attempted possession" of the material, which, at the time of the incident here, would constitute a misdemeanor offense of sexual exploitation of a child. *See* § 18–6–403(3)(b.5) (possession of sexually exploitative material); § 18–2–101(6), C.R.S.2008 (criminal attempt). We therefore will not construe "arranges for" to include "arranges to obtain" as this would result in an unconstitutional interpretation. *See People v. Zapotocky,* 869 P.2d 1234, 1240 (Colo.1994) (statutory terms should be construed in manner that avoids constitutional infirmities); *see also People v. Marcy,* 628 P.2d 69, 79 (Colo. 1981) (a statute violates the equal protection of the laws when it is not reasonably distinguishable from the statutory definition of a less serious offense, yet carries a greater penalty).

## C. Remedy

While we conclude defendant's conviction cannot be sustained for the offense of prepares (or arranges for) sexually exploitative material, this does not end our inquiry. Rather, we must determine whether defendant's conviction must be vacated for insufficient evidence or whether the case must be remanded for a new trial on any of the other methods proscribed under section 18–6–403(3)(b), because each of these methods was submitted to the jury in the instruction defining the offense.

The People on appeal argue that the conviction should not be vacated because "the

jury could find the defendant guilty based on any of the terms used in the statute," and the evidence was sufficient to support a conviction under any of these terms. We disagree.

■ In considering a challenge to the sufficiency of the evidence, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support the conclusion by a reasonable person that the defendant is guilty of the offense charged beyond a reasonable doubt. *People v. Denton,* 91 P.3d 388, 390 (Colo.App.2003). We must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *Id.*

Here, the elemental jury instruction tracked the language of section 18–6–403(3)(b) and provided that the elements of sexual exploitation of a child are:

(1) That the defendant,

(2) in the state of Colorado, on or about June 9, 2005 and July 18, 2005 in El Paso County,

(3) knowingly,

(4) prepared, arranged for, published, produced, promoted, made, sold, financed, offered, exhibited, advertised, dealt in, or distributed

(5) any sexually exploitative material.

The remaining conduct identified in the jury instruction on this count includes: published, produced, promoted, made, sold, financed, offered, exhibited, advertised, dealt in, or distributed. As to the terms "produced" and "made," we conclude the evidence, taken in the light most favorable to the prosecution, is insufficient to support the conclusion that defendant engaged in the process of making or producing the material. Here, the evidence shows only that defendant downloaded already-existing material in a share-capable computer file. The evidence therefore was insufficient to support a conviction under these two terms.

Finally, the prosecution at trial never argued, and never submitted any evidence, that defendant published, promoted, sold, fi-

nanced, offered, exhibited, advertised, dealt in, or distributed the material. Hence, no evidence supported a conviction under these terms of the statute. *See People v. Hernandez,* 224 P.3d 343, —— (Colo.App. 2009).

Based on the foregoing analysis, defendant's conviction cannot be sustained for the offense of sexual exploitation of a child, as proscribed in section 18–6–403(3)(b), on any of the methods submitted to the jury. We therefore conclude that defendant's conviction must be vacated.

Consequently, we need not address defendant's remaining contention on appeal.

## IV. Conclusion

We conclude that defendant's guilty verdict was based on a legally inadequate theory of liability. We further conclude that the evidence was otherwise insufficient to support a conviction for sexual exploitation of a child under section 18–6–403(3)(b).

The judgment of conviction for sexual exploitation of a child under section 18–6–403(3)(b) is vacated and the case is remanded to the district court for entry of judgment of acquittal on that count.

Judge RICHMAN and Judge KAPELKE *, concur.